IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| TIMOTHY ZAMPERINI, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 06-0052-S-MHW |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| JO ANNE B. BARNHART, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Respondent. | ) | |

### Introduction

Currently before the Court for its consideration is Petitioner Timothy Zamperini's

("Petitioner") request for judicial review (Docket No. 1) of the Respondent's denial of social

security disability benefits, filed February 6, 2006.  Petitioner brought this action pursuant to the

Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g).  The Court has reviewed the

Petition for Review and the Answer, the parties' memorandums, the administrative record

("AR") and for the reasons that follow, will affirm.

**I.**
**Background**

**A.     Administrative Proceedings**

Petitioner filed an application for Social Security Disability Insurance Benefits on

February 5, 2003.  (AR 94-96.)  He alleged disability since May 23, 2002.  (AR 94.)  His

application was denied initially on March 18, 2003 (AR 72-76) and upon reconsideration on July

25, 2003 (AR 63-68).  After a timely request for a hearing was filed August 8, 2003 (AR 62),

Petitioner, represented by attorney representative Andrea Cardon, appeared and testified before

Administrative Law Judge (ALJ) Robin Henrie on August 18, 2004.  (AR 277-316.)  Vocational

expert Anne Austen also appeared and testified.  (AR 277-316.)

ALJ Henrie considered the testimony and all other evidence of record and on January 25,

2005, issued a decision finding Petitioner not disabled within the meaning of the Act, and

therefore not entitled to disability insurance benefits.  (AR 46.)  This became the final decision

of the Commissioner when the Appeals Council declined to review the ALJ's decision on

December 2, 2005.  (AR 4.)  Petitioner has exhausted all administrative remedies and is seeking

judicial review pursuant to Section 405(g) of the Social Security Act.

**B.      Statement of Facts**

At the time of the hearing, Petitioner was fifty-four (54) years old.  (AR 56.)  Petitioner

has fourteen years of education.  (AR 56.)  His prior work experience consists of electrician and

thermal test technician.  (AR 54.)   Petitioner alleged disability since May 23, 2002, due to

chronic pain, back problems with annular tear at L2-3 and disc bulges, testicular injury, and

anxiety and panic attacks.  (AR 47.)

Petitioner was involved in a motor vehicle accident on March 8, 2002, while he was

working, where he suffered injuries that caused low back pain and reaggravated a previous

injury to his right testicle.  (AR 150.)  These injuries were evaluated and treated in association

with a workers' compensation claim.  (AR 156-164.)  An examination on April 2, 2002 revealed

a swollen and tender right testicle.  Upon examination of his lumbar spine, there was no ankle

reflex, flexion was 45 degrees and extension was 10/20.  Diagnosis was lumbar spine sprain

superimposed on pre-existing chronic degeneration of lumbar spine, loss of ankle reflexes that was probably chronic, and exacerbation of epididymitis and right groin strain.  (AR 145.)  On April 3, 2002, Petitioner underwent x-rays of the lumbosacral spine which showed degenerative change of the lumbar spine and lower thoracic spine but no fracture or subluxation was seen.  (AR 153.)

At an examination by Dr. Steve James Villarreal, M.D., on April 8, 2002, Petitioner complained of severe and constant right-sided groin and testicular pain that frequently worsened, moderate right elbow pain that frequently worsened, anxiety, insomnia and numbing and tingling.  (AR 157.)   Upon reexamination on May 8 and May 17, 2002, the physician noted that his spine and lumbar symptoms were improving but not his groin and genital area pain.  (AR 162.)  The physician noted that Petitioner's prognosis at that time was "poor" as he was still symptomatic of his "worsened chronic lumbar and right-sided groin/genital conditions."  (AR 163.)

On May 20, 2002, Dr. Kyle Landauer, M.D., evaluated Petitioner for an orthopaedic surgery consultation.  (AR 184.)  He diagnosed lumbar strain with right lower extremity radiculopathy and right groin strain, possible testicular injury.  (AR 186.)  On May 24, 2002, an MRI was performed on Petitioner's lumbar spine and showed a small central posterior annular tear at L2-3 and a 1 mm disc bulge with degenerative disc desiccation.  (AR 188.)  At L3-4, L4-5, and L5-S1, there was degenerative disc desiccation and small bulges at L3-4 and L4-5 and right degenerative facet arthrosis at L5-S1.  (AR 189.)  On a followup visit with Dr. Landauer on July 1, 2002, Petitioner complained of low back pain, radiating to the right thigh with numbness and tingling.  He could sit and stand for one hour and walk one-half mile.  He had right-sided

groin pain with lifting.  (AR 181.)  Lumbar epidural and facet blocks at L2-3 were

recommended.  The doctor opined that Petitioner remained "temporarily totally disabled."  (AR

182.)  On August 12, 2002, Dr. Landauer prescribed Darvocet.  Because of issues with his

insurance, Petitioner had not undergone the lumbar epidural and facet blocks at L2-3.  (AR 177.)

On September 9, 2002, Dr. Landauer reported that Petitioner was still complaining of constant

pain of the low back radiating to right lower extremity with numbness and tingling as well as

pain in the right groin and testicle area.  He was to continue on a home therapy program and on

Darvocet and Dalmane.  (AR 174.)

On January 22, 2003, Petitioner consulted with Dr. Michael Sant, M.D., of Idaho

Physical Medicine and Rehabilitation, for a physical medicine and rehabilitation evaluation.

Petitioner described his pain as a deep aching sensation along his lower back extending out to his

hip regions bilaterally.  He also reported "stabbing pain" down his right groin and into his upper

testicle as well as numbness across his anterior thighs.  (AR 208.)  Petitioner noted decreased

sensation over the upper lateral aspects of his thighs bilaterally.  (AR 209.)  On physical

examination, the physician noted that Petitioner had persistent low back pain with some radicular

symptoms but that the MRI did not show evidence of nerve root impingement so his back

symptoms may be coming primarily from the annular tear.  The doctor recommended an anti-

flammatory and a muscle relaxant to reduce the symptoms.  (AR 210.)  On followup

examinations, Dr. Sant gave Petitioner trigger point injections for relief of his lower back pain.

Petitioner was experiencing anxiety and having trouble sleeping in addition to his back pain and

dysesthesis in his right thigh.  (AR 204-07.)

On July 9, 2003, Petitioner was referred to Debora Thiel, Ph.D., for a mental status

evaluation.  (AR 214-221.)  Dr. Thiel noted that Petitioner's attention and concentration abilities were moderate, immediate recall was good, recent memory was good and past memory was adequate.  (AR 218-19.)  He described a typical day as waking at 10 a.m., drinking coffee, tending to personal hygiene, and doing dishes.  He then watches television, reads, waters the lawn, and/or goes for walk if he feels up for it.  He typically naps during the day due to fatigue and difficulty sleeping at night.  In the late afternoon, he washes clothes and make dinners for the household.  He reported he did many of these activities with difficulty.  (AR 217.)  Following her examination of Petitioner, Dr. Thiel diagnosed him with: major depressive disorder, recurrent, moderate; generalized anxiety disorder with panic attacks; alcohol dependence in early partial remission; cocaine dependence in sustained full remission; cannabis dependence in sustained full remission; polysubstance dependence in sustained full remission (mescaline, LSD, mushrooms, speed, crank).  (AR 220.)

On July 21, 2003, Maximo J. Callao, Ph.D., a medical consultant with Disability Determination Unit, reviewed Dr. Thiel's report and completed his own Mental Residual Functional Capacity Assessment.  (AR 236-39.)  He stated that Petitioner is "not credible to the extent he alleges disability...he is able to perform simple work activity that does not involve extensive involvement with the public."  (AR 238.)  He also stated that Petitioner would have difficulty adapting to unexpected changes in the workplace due to his anxiety and depression. (AR 238.)

In January 2004, Petitioner consulted with Dr. Timothy Doerr, M.D., regarding his low back pain.  An MRI was taken and the results revealed a small central disk bulge at L4-5 and multiple level disk space desiccation.  Dr. Doerr did not think there was a good surgical solution

but that Petitioner should seek formal pain management evaluation instead.  (AR 252-54.)
Petitioner continued treatment with Dr. Sant for his chronic low back pain and saw him several
times in late 2003 and early 2004.  Several different pain medications, including bilateral SI joint
injections of Depo-Medrol and Lidocaine, Methadone and Norco, were prescribed.  (AR 264-
71.)  He was unable to tolerate the Methadone and discontinued use of it.  (AR 264.)  He also
found that Ibuprofen was too hard on his stomach.  (AR 266.)   Dr. Sant noted that findings on
the MRI were not "particularly correlative with the symptoms that he is having."  (AR 268.)  A
few months later, Dr. Sant stated that Petitioner had "decreased range of motion and pain
behaviors consistent with his chronic low back pain."  (AR 264.)

On May 7, 2004, Petitioner underwent x-rays of his hands bilaterally to evaluate the
possibility of arthritis after suffering from joint pain for six years.  The x-rays showed mild
changes of degenerative joint disease bilaterally with no findings to suggest inflammatory
arthropathy.  (AR 256.)  Petitioner sought further medical care for the pain in his hands by Dr.
Alex Homaechevarria, M.D., in July 2004.  Examination revealed some mild hypertrophic
changes of primarily his MCP joints as well as PIP joints.  There was some stiffness, particularly
with flexion and grip strength testing.  (AR 257.)  The doctor noted a potential diagnosis of
rheumatoid arthritis because the lab reports showed a positive rheumatoid factor of 24 but a
normal anti citrulline antibody at 2.  (AR 260-62, 276.)   On February 5, 2005, Dr. Lawrence
Sassadeck, N.M.D., examined Petitioner and reviewed his medical records.  He found that the
objective findings of his examination were compatible with the subjective symptoms and placed
Petitioner on total temporary disability until further notice.  He also stated that he believed
Petitioner's spinal injuries and pre-existing conditions were permanent.  He concluded that

**Memorandum Decision and Order - Page 6**

Petitioner's "whole body impairment rating is 100%..."  (AR 12-21.)

## II.
### Findings of the Administrative Law Judge

In the decision issued following the hearing (AR 46-57), the ALJ made specific findings

as follows:

1.    The claimant met the disability insured status requirements of the Act on May 23, 2002, the date the claimant alleged an inability to work, and continues to meet them through December 31, 2007.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset date of disability as noted above.

3.    The claimant alleges the severe impairment(s) noted above, which are incorporated herein by reference.

4.    The claimant does have severe impairment(s), which combine to significantly limit the ability to perform basic work-related activities, as set forth in detail above.

5.    The exhibits and testimony do not establish that a listing is met or equaled in this case.

6.    The ALJ has determined the claimant's credibility regarding symptom testimony as set forth in detail above in the body of the decision.  Such credibility findings are incorporated herein by reference.  It is concluded that the claimant's impairments and symptoms do not preclude the occupations suggested by the vocational expert.

7.    The claimant suffers from severe impairments, which reduce the residual functional capacity to the performance of only a limited range of light work, as set forth in detail in the body of the decision.

8.    The claimant is unable to perform any past relevant work, for the reasons detailed above.

9.    The claimant is 54 years of age, which is defined as an individual "closely approaching advanced age."

10.   The claimant has 14 years of education.

11.    Work skills are not an issue in this matter as noted in detail above.

12.    Considering these vocational factors and the claimant's residual functional capacity, Medical-Vocational Rules 202.14 and 202.15 provide the framework for a finding of "not disabled."  Within this framework the claimant could perform a significant number of jobs, in the national economy, in the various occupations cited by the vocational expert, as set forth in detail above.

13.    The claimant has not been under a "disability," as defined in the Social Security Act, at any time prior to the date of this decision.

## III.
## Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); and *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Id.*  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner."  *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

The Social Security Commissioner has established a five-step evaluation process in order to determine whether a person is disabled for purposes of awarding disability benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lester v. Chater,* 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *Bowen*

*v. Yuckert*, 482 U.S. 137, 140-42 (1987).  First, the Commissioner determines whether the claimant is engaged in substantial gainful activity.  If the claimant is engaged in such activity, disability benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   The ALJ determined that the Petitioner has not performed any substantial gainful activity since May 23, 2002, the alleged onset date of disability.  Post onset earnings consist of a pension annuity.  (AR 47.)

Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.  The ALJ found that the objective medical evidence establishes that severe impairments have been diagnosed and treated from the alleged onset date to the date of the decision (a period of 12 continuous months or more) and that such impairments are of sufficient duration to more than minimally limit the claimant's ability to perform basic work activities.  (AR 48.)

If the impairment is severe, the Commissioner proceeds to the third step of the evaluation process to determine whether the claimant has an impairment which meets or equals those contained in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4 and meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d), (e); 416.920(a)(4)(iii), (d), (e).  Appendix 1 contains a list of impairments which would prevent a person from engaging in substantial gainful employment.  If a claimant can show he or she is limited by such an impairment, disability is presumed.   The ALJ determined that Petitioner's severe impairments

**Memorandum Decision and Order - Page 10**

did not meet or equal the severity of any of the listings in Appendix 1, Subpart P, Regulation No. 4.  (AR 49.)

If the impairment is not one that is presumed to be disabling, then the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e. whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  If the claimant is able to perform past work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  In the instant case, the ALJ determined that the Petitioner had the residual functional capacity to perform the full range of light work, except that such work could not require:  standing or walking more than 30-45 minutes at a time, nor more than 5-6 hours in an 8-hour workday; sitting more than 30-45 minutes at a time, nor more than 5-6 hours in an 8-hour workday; sitting, standing or walking more than 10-15 minutes at a time (the sit/stand option); stooping, bending or squatting of significance (rarely); work on the floor (no kneeling, crawling, crouching, etc.); stair climbing (a few steps not precluded); and work at more than a low stress level, which means: a low production rate, and essentially no working with the general public.  Also, the work must allow the claimant the option to rest, recline or lay down on breaks and lunch when needed and there can be no uneven walking surfaces (curbs, sidewalks and ramps are not precluded).  Based on these conclusions and given that Petitioner's previous work experience has been as an electrician and thermal test technician, the ALJ concluded that Petitioner cannot perform any past relevant work.  (AR 54.)

If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine whether the claimant can make an adjustment to other work after considering the claimant's residual functional capacity, age, education and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Based on the testimony of the vocational expert and using Medical-Vocational Rules 202.14 and 202.15 as a framework for decision making, the ALJ concluded that occupations exist in significant job numbers in the national economy which the Petitioner is capable of performing and he is therefore "not disabled" under step five of the evaluation.  (AR 55.)

## IV.
## Issues Raised

The primary issue before the Court is whether the final decision of the Secretary is supported by substantial evidence and whether it is based on proper legal standards.  *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  Petitioner contends that the ALJ erred in the following respects:

1.      The ALJ did not properly find that Petitioner's testimony was not credible.

2.      The ALJ did not give proper consideration to the medical opinions.

3.      The ALJ did not properly evaluate the vocational considerations.

The Court will take each argument in order.

## V.
## Discussion

### A.      Petitioner's Credibility

Petitioner argues that the ALJ did not properly find the Petitioner to not be credible. Petitioner maintains the fact that he is capable of occasional, light household chores does not mean he is capable of full-time competitive work activity.  Petitioner submits that the ALJ has

misstated his testimony and therefore did not give clear and convincing reasons for rejecting his testimony.  Petitioner also asserts that the ALJ's negative credibility evaluation is not supported by substantial evidence in the record.  Lastly, Petitioner contends that the ALJ did not state specifically what he found inconsistent or "not credible" when observing Petitioner at the hearing.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ's findings must be supported by specific, cogent reasons.  *Id*.  If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony.)  Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony.  *Id*.  General findings are insufficient, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities,

claimant's work record and testimony from physicians and third parties concerning the nature,

severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d

947, 958-59 (9th Cir. 2002). Also, the ALJ may consider: location, duration and frequency of

symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of

medications; and treatment measures taken by claimant to alleviate those symptoms. *See* Soc.

Sec. Ruling 96-7p.

In his decision, the ALJ stated: "The ALJ does not find the claimant's functional

allegations, and conclusions of total disability, to be reasonably consistent with the objective

medical evidence and non-medical evidence...Based on the medical record and testimony and

observations of claimant during the hearing, the ALJ is discounting the claimant's subjective

symptom complaints and their alleged functional effect in determining such are not totally

disabling, either singly or in combination." (AR 53-54.)

The ALJ cited to many instances in the record where the medical evidence and

Petitioner's daily activities did not support Petitioner's alleged functional limitations. These

include that there is no evidence of hard neurological deficits with regard to his back pain, the

groin pain has appeared to resolved itself since it is not mentioned after January 2003, treatment

has been conservative and his pain appears to be controlled with medication and posture

changes. The ALJ also noted that Petitioner's testimony of doing some housework such as

dusting and rinsing dishes, and some yardwork such as watering plants, as well as reading,

watching television and movies, fishing, going to restaurants and that he took a 4-hour trip to

Riggins, Idaho and another time was gone from home for 3 hours to float the Boise River,[1] indicates that his activities of daily living are not significantly restricted.  The ALJ remarked that Petitioner rated his own pain between 2 and 4 on a scale of 1-10 in 2003.  The ALJ mentioned that in January 2004, it was reported that Petitioner's symptoms were not correlative to the findings on the most recent MRI.  The ALJ also found that the medical evidence regarding Petitioner's hand pain did not support a finding that it posed any significant limitations on his ability to function, nor did the condition meet the 12-month duration requirement.

Petitioner is correct in his argument that the ALJ did not state specifically what observations at the hearing led to his diminished credibility finding, nonetheless, the ALJ did state clear and convincing reasons for discounting Petitioner's subjective symptom complaints. The ALJ noted that: Petitioner's daily activities are not significantly restricted and his level of activity is inconsistent with the claimed limitations; treatment measures taken have been conservative; Petitioner's pain is in the mild to moderate range and is controlled with medication and posture change; the medical record does not show hard neurological deficits and motor strength has been normal; Dr. Sant stated that the MRI was not "particularly correlative with the symptoms" Petitioner was having (AR 268); and no treating or examining physician has precluded Petitioner from all types of work.

As stated above, it is the ALJ's job to determine credibility.  *See Meanel v. Apfel,* 172

---

[1]  The ALJ noted in his decision that Petitioner was able to float the Boise River "which is three hours away from town."  The actual testimony of Petitioner is that he was away from his home for a total of three house when he floated the Boise River.  (AR 299.) This misstatement by the ALJ is not so detrimental as to completely discredit the ALJ's credibility finding.  It is not necessarily the time away from home that was crucial to the ALJ's finding but rather the activity itself.  Petitioner also states that the ALJ misstated his testimony regarding his naps.  Petitioner's testimony was that he takes a nap every day for 2 hours and it takes a "good hour" just to relieve the tension and pain.  (AR 290.)   The ALJ stated: "...he takes 2 hour naps throughout the day and needs to be down 1 hour at a time."  (AR 52.)  The ALJ's statement of Petitioner's testimony, although not verbatim, is not a gross misstatement of the testimony that would affect the ALJ's ultimate finding regarding Petitioner's credibility.

F.3d 1111, 1113 (9th Cir. 1999).  If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002).   If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is sound.  There is substantial evidence in the record to support the ALJ's finding that the Petitioner was not fully credible as the ALJ took into consideration the lack of support for Petitioner's symptoms in the medical record, inconsistencies between Petitioner's daily activities and his alleged inability to work, the amount and type of treatment he received, the manageability of his pain and that none of Petitioner's treating or examining physicians opined that he was is precluded from all work activity.

The Court finds that, based on the above, there is substantial evidence in the record to support the ALJ's finding that Petitioner was not fully credible.  The Court will not engage in second-guessing when the ALJ's decision is sound and there is substantial evidence to support it.

**B.      Consideration of Dr. Thiel's Opinion**

Petitioner argues that the ALJ's has not provided clear and convincing reasons for rejecting Dr. Thiel's opinion and that the rejection was not supported by substantial evidence in the record as the ALJ did not consider the facts as a whole.  Petitioner maintains that Dr. Thiel found several problems that Petitioner suffered from which would affect any job and that the ALJ was incorrect in his statement that there was no evidence that he could not do the easier jobs noted by the vocational expert.

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and

found to be unsupported by clinical findings.  *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  An ALJ may reject a treating or examining physician's uncontradicted opinion for "clear and convincing" reasons.  *Id*.

If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion.  *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004).  Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities.  *See id*.; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

The ALJ did not completely reject Dr. Thiel's opinion.  The ALJ stated that he gave the opinion of Dr. Thiel that Petitioner has serious mental limitations (specifically, a Global Assessment of Functioning (GAF) score of 45)[2] little weight because it was not supported by other evidence in the record or Dr. Thiel's own findings on examination.  The ALJ noted that Dr. Thiel stated that Petitioner's memory was good (AR 219), that he understood and remembered instructions (AR 221) and little difficulty maintaining persistence during testing (AR 218).  The ALJ found that Dr. Thiel's own examination notes did not support her ultimate finding regarding Petitioner's limitations.  Contradiction between a physician's clinical notes, other recorded

---

[2]  A GAF score of 41-50 indicates serious symptoms or any serious impediment in social, occupational or school functioning.  American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th Ed. Text Revision 2000).

observations and opinions and that doctor's ultimate assessment is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Such a reason given by the ALJ is a "permissible determination within the ALJ's province." *Id.*

The ALJ noted that the Petitioner did not receive any mental health treatment. Treatment is an important indicator of the intensity and persistence of a claimant's symptoms. *See* 20 C.F.R. § 404.1529(c)(3). Although Petitioner took anti-anxiety medicine throughout the years, it does not appear that he ever sought out any other mental health care. The ALJ also could properly consider the opinion of Dr. Callao who did not find that Petitioner's mental condition prohibited substantial gainful employment, even though he did not personally examine Petitioner. The ALJ also stated that there was no evidence in Dr. Thiel's evaluation that Petitioner could not perform the easier work suggested by the vocational expert.

The ALJ has stated clear and convincing reasons for giving Dr. Thiel's opinion little weight. The record as a whole does not support Dr. Thiel's opinion. The ALJ noted inconsistencies within Dr. Thiel's own evaluation and that alone is a clear and convincing reason for the ALJ's finding. Additionally, even if the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## C.     Vocational Considerations

Petitioner argues that the ALJ did not address any questions to the vocational expert as to adaptability[3] and how that can impact an individual's ability to sustain work. Petitioner maintains that is it unclear whether the ALJ's hypothetical questions posed to the vocational

---

[3] In Dr. Thiel's evaluation, she noted that Petitioner identified "great difficulty in adapting to unexpected changes in a planned schedule...His adaptability is thus limited." (AR 221.)

**Memorandum Decision and Order - Page 18**

expert took into consideration Petitioner's pain.  Petitioner asserts that pain testimony must be considered in the disability evaluation process.  Petitioner also contends that an "individual who cannot walk, stand or sit for over one hour without pain does not have the capacity to do most jobs available in the national economy" and points out that the ALJ's own hypothetical stated that Petitioner could not sit more than 30-45 minutes at a time.  *See Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984).

At the final step of the disability evaluation process, the ALJ determine whether the claimant can make an adjustment to other work after considering the claimant's residual functional capacity, age, education and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  There must be a significant number of jobs in the national economy the claimant can perform given his residual functional capacity.  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  The ALJ can make this determination by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines.  *Id*.  When the Guidelines inadequately account for the claimant's limitations, an ALJ should use the Guidelines as a framework only and must consult a vocational expert.  *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).  Generally, an ALJ may rely on vocational expert testimony.  20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  The hypothetical posed to the vocational expert should be accurate, detailed and supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The ALJ does not need to include impairments that are not supported by substantial evidence in the record.  *Id*.

The ALJ posed a hypothetical that was supported by substantial evidence in the record. The ALJ did not need to include Petitioner's "adaptability" limitation if he found it was not

supported by substantial evidence in the record.  Additionally, the ALJ did include the limitation

of not sitting more than 30-45 minutes a time and even with that limitation, the vocational expert

noted several jobs available in the national economy that Petitioner would be capable of

performing. The ALJ is allowed to rely on the vocational expert's testimony.

As to Petitioner's pain, the ALJ included several limitations in his hypothetical to

account for Petitioner's pain, including: limitations on the amount of time Petitioner could be on

his feet; limitations on how long he could sit; the need to change postures; limitations on

bending, stooping, squatting, kneeling, crawling, crouching, climbing; that an area was needed

where Petitioner could rest or recline, etc.  Although the hypothetical did not specifically

mention Petitioner's pain, many of these limitations were included to account for Petitioner's

pain.  The ALJ need only include all the impairments and limitations supported by substantial

evidence in the record which he did.  Since the ALJ included all the limitations supported by

substantial evidence, it was proper for him to rely on the vocational expert's testimony that there

are jobs in the national economy that Petitioner is capable of performing.  The ALJ's finding at

step five is not the product of legal error.

## VI.
## Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision

is supported by substantial evidence and is not the product of legal error.[4]  Therefore, the

Commissioner's decision finding that the Petitioner is not disabled within the meaning of the

Social Security Act will be affirmed.

---

[4]  Petitioner states in the "Conclusion" part of his brief that the ALJ did not substantiate his conclusions
with "clear and convincing evidence."  As noted earlier, this is not the legal standard.  The decision of the
Commissioner must be supported by "substantial evidence," which is different than "clear and convincing" evidence.

**Memorandum Decision and Order - Page 20**

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be **AFFIRMED** and that the petition for review be **DISMISSED**.



DATED: March 28, 2007

Honorable Mikel H. Williams
United States Magistrate Judge